# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LEGETA HAMMOND, as next friend to**
**WILLIAM HAMMOND, a minor,**

              **Plaintiff,**

**v.**                                                            **Civ. No. 98-1005 JP/JHG**

**CAROLYN SHERMAN, LOWELL IRBY,**
**MARGARET AGUILAR, MIKE CASABONNE,**
**and DANIEL REYES, in their official capacities**
**as members of the Artesia Board of Education;**
**ARTESIA HIGH SCHOOL, ex rel. RICK STEWART**
**and JIM MOOR, in their individual and official**
**capacities; JOHN JACKSON, a minor, by and through**
**COLEMAN JACKSON, SR., and MILDRED ANN SMITH**
**(natural parents of JOHN JACKSON); RUSSELL WILSON,**
**a minor, by and through MR. and MRS. BARRY WILSON**
**(natural parents of Russell Wilson), in their individual capacities.**

              **Defendants.**

## MEMORANDUM OPINION AND ORDER

On October 6, 1998, Defendants Carolyn Sherman, Lowell Irby, Margaret Aguilar, Mike Casabonne, and Daniel Reyes, in their official capacities as members of the Artesia Board of Education; and Artesia High School, ex Rel. Rick Stewart and Jim Moor, in their individual and official capacities ("School Defendants") filed their motion to dismiss (Doc. No. 16). After careful consideration of the law and the briefs, I conclude that the motion should be granted.

## Background

In her complaint, Plaintiff alleges that on August 29, 1997, William Hammond ("Hammond") and several other students at Artesia High School—including Defendants John Jackson ("Jackson")

and Russell Wilson ("Wilson")—gathered in the school parking lot before classes started. Jackson and Wilson grabbed Hammond and attempted to drag him toward a trash receptacle that sat across the street from the school. When Jackson and Wilson grabbed him, Hammond fell toward the ground and as he did his right hand was caught in the metal bumper of a vehicle parked in the parking lot. Jackson and Wilson unsuccessfully attempted to pull Hammond away from the vehicle several times. The pulling motion caused severe lacerations and completely severed major tendons in all of Hammond's fingers of his right hand.

Plaintiff claims that Jackson and Wilson's actions were motivated and carried out in the name of Artesia High School's tradition called "putting rats in the rat can." According to the tradition, at the beginning of the school year, male sophomores who are new to the school are called "rats." The tradition calls for male students to select a "rat," restrain him without his consent, drag him across the parking lot, and throw him into a large trash receptacle across the street from the school that has the words "RAT CAN" painted on it.

These activities take place in the high school parking lot before class begins. School buses arrive at the school at approximately 7:45 a.m. However, school authorities do not unlock and open the school doors until 8:30 a.m. As a consequence, the students gather in groups in the school parking lots from 7:45 a.m. until 8:30 a.m. According to Plaintiff, this "gathering period" provides students like Jackson and Wilson with enough time to carry out the tradition of "putting rats in the rat can."

On August 20, 1998, Legeta Hammond, as next friend to Hammond, a minor, filed a

Complaint[1] seeking redress for certain civil rights violations under the United States Constitution through 42 U.S.C. § 1983 and 1988, and under the New Mexico Tort Claims Act and New Mexico common law.

**Legal Standard**

The School Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, in deciding the School Defendants' motion, I must presume that all of Plaintiff's factual allegations are true. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), and I must construe Plaintiff's factual allegations in a light most favorable to her, drawing all reasonable inferences in her favor. Id.

**Discussion**

As an initial matter, I note that there is an ambiguity as to the cause of action alleged in Count I, which is styled "42 U.S.C. § 1983--NMSA 1978, § 41-4-6." Section 41-4-6 of the New Mexico statutes is part of the New Mexico Tort Claims Act. Most of the information set forth in Paragraphs 14 and 15 in support of Count I appears to be the basis of a tort claim rather than a constitutional claim under Section 1983. For example, Plaintiff alleges that Defendants "negligently operated and maintained school property by knowingly allowing and actually promoting [a] dangerous defect or condition on school property," failed to protect students prior to the beginning

---

[1] In an Order entered April 6, 1999, I granted Plaintiff's motion to amend the complaint. However, Plaintiff's amended complaint has not yet been filed. Consequently, all references in this Memorandum Opinion and Order are to Plaintiff's original Complaint. However, it does not appear that the analysis of Plaintiff's claims would have been different under Plaintiff's proposed First Amended Complaint.

of morning classes from the known dangerous propensity of fellow students, and failed to properly instruct students on the dangers of "hazing." Plaintiff also alleges that Hammond has been damaged "as a proximate result of the Defendants' ... negligence." Consequently, I interpret Count I of Plaintiff's Complaint to be a claim for negligence under the New Mexico Tort Claims Act despite the mention of 42 U.S.C. § 1983 in the heading. Furthermore, I interpret Plaintiff's constitutional claim to fall under Count II of the Complaint. However, any allegations stated under Count I which are relevant to the Section 1983 claim will of course be considered in my analysis of that claim.

## *I. Claim under 42 U.S.C. §1983*

### *A. Failure to adequately allege a violation of a constitutional right*

The School Defendants contend that Plaintiff has failed to state an actionable claim in Count II because, inter alia, Plaintiff has failed to "allege the particular constitutional right that has been violated." Defendants' Brief at 9. The Defendants acknowledge, however, that Hammond denominated Count II of his Complaint as a "Violation of Due Process—Creation of Dangerous Situation." Id.

While Plaintiff does not expressly cite a specific constitutional provision or other federal law that establishes a "substantive due process right to be free from dangerous situations," Plaintiff alleges that the School Defendants created a dangerous situation by their actions. Pltf. Compl. at 5-6. Plaintiff also clearly states that because the School Defendants knowingly created a dangerous situation, their conduct "shocks the conscience," and Hammond's "Due Process" rights were therefore violated. Id. These allegations adequately present under Tenth Circuit law a claim that the School Defendants had created a danger for a plaintiff that is sufficient to establish liability, despite the general rule that 42 U.S.C. §1983 ordinarily does not impose an affirmative obligation on the

4

state to protect people from other people.  See Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995). Plaintiff's use of the term "Due Process" in the heading of Count II of the Complaint, coupled with allegations that fit the legal standard governing the "creation of a danger" exception to the general rule against liability, is sufficient to state a substantive due process claim under the Fourteenth Amendment.  Consequently, Defendants' motion to dismiss on the ground that Plaintiff has failed to specify the constitutional right that has been violated should be denied.

### *B. State Action under 42 U.S.C. §1983*

In Counts I and II of the Complaint, Plaintiff alleges that the School Defendants violated Hammond's federal constitutional rights by "knowingly allowing and actually promoting [a] dangerous defect or condition on school property. . ., failing to protect students prior to school, failing to control a known dangerous propensity of fellow students, maintenance [sic] of a receptacle on school property. . .which was labeled for the specific use of 'hazing', and failing to properly instruct students that such 'hazing' could be dangerous."  Plaintiff further states that the risk to Hammond was well known by the School Defendants, who acted with reckless disregard of the risk by allowing and promoting the hazing, which is shocking to the conscience.

The School Defendants contend that Plaintiff has failed to state an actionable claim under 42 U.S.C. § 1983 because neither Artesia High School nor any of its agents owed Hammond an affirmative constitutional duty to protect him from private violence.  The Defendants also argue that Plaintiff's claims do not fall within any exception to § 1983's general proscription that the State does not have to protect citizens from private violence.

Section 1983 provides a cause of action to individuals who have been deprived of a federal right by someone acting under the color of state law.  See 42 U.S.C. § 1983.  Local governments,

including public school boards, may be sued under § 1983 where official policy or governmental custom is responsible for a deprivation of rights protected by the Constitution. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). Local governments are liable for damages only when execution of one of their policies or customs inflicts the injury. Id. at 691-95. The plaintiff must show an affirmative link between the policy or custom and the particular constitutional violation alleged. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

In the context of a § 1983 action, the due process clause forbids the state itself from depriving individuals of life, liberty or property without due process. See DeShaney v. Winnebago County Dep't. of Social Servs., 489 U.S. 189, 195 (1989). Section 1983 ordinarily does not impose an affirmative obligation on the state to ensure that those interests are not harmed by other means or by someone other than the state. Id. There are, however, two exceptions to the general rule that a § 1983 claim cannot be based on the state's failure to protect an individual against private violence. Id.

### 1. Special Relationship Doctrine

The first exception, generally referred to as the "special relationship doctrine," see Liebson v. New Mexico Corrections Dep't, 73 F.3d 274, 276 (10th Cir. 1996), "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995). According to the Supreme Court, only when "the State takes a person into its custody and holds him there against his will...[does] the Constitution impose[] upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney, 489 U.S. at 199-200. The DeShaney Court, in explaining the rationale behind this principle, stated that:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits of any state action set by the . . . Due Process Clause.

DeShaney, 489 U.S. at 200.

The Tenth Circuit, in light of DeShaney, has refused to impose or recognize a "special relationship" in the context of the student-school paradigm. In Maldonado v. Josey, 975 F.2d 727, 730 (10th Cir. 1992), the Tenth Circuit confronted the issue of "whether New Mexico State compulsory attendance laws so restrain a school child's personal liberty that the Due Process Clause imposes upon the state an affirmative obligation to protect that child." Answering in the negative, the Maldonado court reasoned that unlike prisoners, the institutionalized, or children in foster homes, school children do not depend completely on the state to satisfy their basic human needs; they are not so restrained by the state that they are incapable of caring for themselves; they can leave school at the end of the day; and their parents retain ultimate responsibility for their food, shelter, clothing, medical care, and reasonable safety. Id. at 732-733.

In her Complaint, Plaintiff concedes that in the normal school setting a "special relationship" does not exist between a student and the school he attends. Plaintiff argues, however, that such a relationship does exist in this case because the School Defendants forced Hammond and other students using Defendants' buses to stay outside the locked school without supervision or security before the beginning of the school day, thereby creating a special relationship sufficient to support liability under § 1983.

Plaintiff's argument is unpersuasive. It is logically untenable to find that Artesia High School

does not owe its students an affirmative constitutional duty of protection from violence by private actors when the students are in school custody and under school supervision during the normal school day, but it does owe students such a duty while the students are unsupervised and left without school security *prior* to the commencement of the normal school day. If the state has no affirmative duty to protect its students from private violence during the normal school day, when it has restrained their liberty to the greatest degree that it can, it is unreasonable to demand that it conform to such a duty before the normal school day begins, when the school has restrained its students liberty, if at all, to a much lesser extent.

### 2. **Creation of Danger Theory**

The "creation of danger" theory provides that a state may be responsible for an individual's safety "if it created the danger that harmed the individual." Uhlrig, 64 F.3d at 567. See also Liebson, 73 F.2d at 276 "[T]he danger creation theory must ultimately rest on the specifics of a substantive due process claim—i.e., a claim predicated on reckless or intentional injury-causing state action which shocks the conscience." Uhlrig, 64 F.3d at 572. In order to satisfy the "shock the conscience" standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Id. at 574. While the Tenth Circuit has refused to precisely define this level of conduct, it has stated that the "shock the conscience" standard "requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort...." Id; see also Collins v. City of Harker Heights Tex., 503 U.S. 115 (1992).

In Uhlrig, the Tenth Circuit articulated a five-part test that determines whether the School Defendants created a special danger for Hammond. In particular, Plaintiff must demonstrate that (1) Hammond was a member of a limited and specifically definable group; (2) the School Defendants'

8

conduct put him at substantial risk of serious, immediate and proximate harm; (3) the risk was obvious or known; (4) the School Defendants acted recklessly in conscious disregard of that risk; and (5) such conduct, when viewed in total, is conscience shocking. Uhlrig, 64 F.3d at 574.

The Tenth Circuit has subsequently stated that, in addition to meeting Uhlrig's five-part test, "a plaintiff must also show that the defendants created the danger or increased the plaintiff's vulnerability to the danger in some way." Armijo v. Wagon Mound Public Schools, 159 F.3d 1253, 1262-1263 (10th Cir. 1998). The Court explained that the "key to the state-created danger cases . . .lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of [his] ability to defend [himself], or cutting off potential sources of private aid. Thus "the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's [acts] to occur." Id. at 1263 (quoting Johnson v. Dallas Ind. Sch. Dist., 38 F.3d 198, 201 (5th Cir.1994)) (internal citations and quotations omitted).

Plaintiff's complaint fails to allege facts that meet two of the required elements.[2]

*(a)  substantial risk of serious, immediate and proximate harm*

Plaintiff alleges that the School Defendants were aware of the risk of harm to Hammond because they knew about the "putting the rats in the rat can" tradition. Plaintiff speculates about a variety of possible serious harms that might accompany the tradition, but she does not allege specific facts sufficient to satisfy her burden of showing that there was a substantial risk that those harms

---

[2]Because I find that Plaintiff failed to allege facts that support her claim that Defendants knew of the risk of imminent, serious, proximate harm to Hammond or that their conduct was conscience shocking, I do not address the other elements set forth under Uhlrig and Armijo.

9

were highly likely to take place. In short, Plaintiff fails to allege specific facts indicating the alleged conduct was so "fraught with unreasonable risk so as to shock the conscience." Liebson v. N.M. Corrections Dep't., 73 F.3d at 276 (quoting Uhlrig v. Harder, 64 F.3d at 576). While Plaintiff claims that the tradition has been taking place for many years (and as recently as two days before the incident in question), she fails to allege that anyone other than her son ever suffered any injuries whatsoever. Even if all of Plaintiff's factual averments are true, they are insufficient to support a valid claim that the Defendants knew that the tradition was almost sure to result in William Hammond sustaining serious harm.

### *(b) conscience shocking conduct*

According to the Supreme Court, the Due Process Clause's "protection against 'conscience shocking' conduct traditionally only involved deliberately wrongful government decisions rather than merely negligent government conduct." Collins v. City of Harker, 503 U.S. at 127 n. 10. Collins' focus on intentional conduct coheres with the Tenth Circuit's "recognition that a § 1983 violation must be predicated on a state action manifesting one of two traditional forms of wrongful intent–that is, either: (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm." Uhlrig, 64 F.3d at 573. The Tenth Circuit's definition of the first form of wrongful intent "follows the traditional tort law concept of intentionality." Id. The Tenth Circuit defines the second form of wrongful intent ("recklessness") to mean that a state actor "was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." Medina v. City and County of Denver, 960 F.2d 1493,1496 (10th Cir. 1992). Plaintiff has failed to allege conduct by the School Defendants that is conscience shocking; rather, the conduct described in the complaint is at most

10

merely negligent.

Because Plaintiff did not make adequate factual allegations that the School Defendants' conduct put Hammond at substantial risk of serious, immediate and proximate harm or that such conduct was conscience shocking, Plaintiff's constitutional claim based on Section 1983 (Count II) should be dismissed for failure to state a valid claim.

## C. *Qualified Immunity of Individual Defendants*

Defendants Rick Stewart ("Stewart") and Jim Moor ("Moor") move to dismiss Plaintiff's claims against them in their individual capacities because they are entitled to qualified immunity for any constitutional violation they may have committed in the course of their employment. However, because I have already stated that Plaintiff has not alleged a viable constitutional claim, I need not determine the applicability of qualified immunity.

## D. *State law tort claims*

The Defendants move to dismiss Plaintiff's claim for negligence under the New Mexico Tort Claims Act (Count I) for failure to state a claim upon which relief can be granted. The Defendants contend that the Count I claim is barred because of the doctrine of sovereign immunity. I need not reach this issue because the only claims that will remain in the case are Plaintiff's state law claims of negligence (Counts I and IV), battery (Count III), and spoliation of evidence (Count V); the only federal claim will be dismissed. "[T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice— that is the seminal teaching of United Mine Workers of America v. Gibbs, 383 U.S. 715 [ ](1966) . . . ." Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995). See also 28 U.S.C. § 1367(c)(3) (stating that federal district court may decline to exercise supplemental jurisdiction over state law claims if the district

11

court has dismissed all claims over which it has original jurisdiction). Dismissal of state law claims is dictated by concerns over "judicial economy, fairness, convenience, and comity." Ball, 54 F. 3d at 669. Only when there are compelling reasons to the contrary should a federal district court refrain from dismissing the state law claims. See id. Consequently, the best approach by this federal court is to dismiss the remaining state law claims without prejudice so Plaintiff may pursue them in state court, which may be more familiar with New Mexico state law principles of tort liability.

IT IS THEREFORE ORDERED that:

(1) the School Defendants' motion to dismiss (Doc. No. 16) is GRANTED as to Plaintiff's claim for a violation of constitutional rights under Section 1983 (Count II), and that claim will be dismissed with prejudice; and

(2) Plaintiff's state law claims (Counts I, III, IV, and V) will be dismissed without prejudice so that Plaintiff may reassert them in state court.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**